**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-7746

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DWIGHT JENKINS, a/k/a Huggie, a/k/a Unc,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Senior District Judge. (1:16-cr-00267-CCB-9)

Argued: October 27, 2021                                Decided: December 29, 2021

Before GREGORY, Chief Judge, WYNN, and HARRIS, Circuit Judges.

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Robin M. Earnest, EARNEST ATTORNEY AT LAW, LLC, Riverdale, Maryland, for Appellant. Christina Ann Hoffman, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, WHITEFORD, TAYLOR & PRESTON, LLP, Rockville, Maryland, for Appellant. Jonathan F. Lenzner, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

GREGORY, Chief Judge:

Dwight Jenkins, who is currently serving a 120-month sentence of imprisonment, filed a motion in the district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). In his motion, Jenkins argued that his pre-existing medical conditions placed him at a heightened risk for contracting and suffering severe complications from COVID-19.

Using a form order, the district court denied Jenkins' motion and simply stated that the 18 U.S.C. § 3553(a) factors did not favor release. Although the form order referenced a separate memorandum opinion, which provided a thorough explanation for the denial of Jenkins' motion, the clerk did not docket the memorandum opinion until after Jenkins filed a notice of appeal. On appeal, Jenkins asks this court to exclude the memorandum opinion and review the sufficiency of the form order alone. The record in this case, however, compels us to conclude that the delay between the filing of the form order and memorandum opinion was merely a clerical error. Accordingly, both the form order and memorandum opinion may be considered on appeal. For the reasons that follow, we conclude that the district court's decision to deny Jenkins' motion fell within its permissible discretion. Thus, we affirm the district court.

## I.

In reviewing a district court's denial of a motion for compassionate release, we review the record for an abuse of discretion. *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021).

2

A.

Jenkins and several other defendants were indicted on multiple conspiracy counts. Specifically, Jenkins was charged with one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); one count of conspiracy to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846; six counts of distribution of heroin and cocaine base, in violation of 21 U.S.C. § 841; and one count of possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g). The charges were based on Jenkins' association with the Murdaland Mafia Piru, a violent gang in Baltimore, Maryland. Although Jenkins never officially joined the gang, he conspired with its members to distribute large quantities of heroin and cocaine base in furtherance of the group's activities.

Eventually, Jenkins pled guilty to racketeering conspiracy and drug trafficking conspiracy, pursuant to a written plea agreement. As part of the agreement, Jenkins stipulated that between May and August 2016, he personally sold over 280 grams of crack cocaine and 75 grams of heroin, as well as an assault rifle and ammunition, to a confidential informant. On April 10, 2017, the district court sentenced Jenkins to 120-months' imprisonment, which represented the mandatory minimum sentence for conspiracy to distribute this quantity of drugs. At this time, Jenkins is serving his sentence at FCI Fort Dix, with a projected release date of April 4, 2025.

B.

On May 12, 2020, Jenkins filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which was supplemented by defense counsel's memorandum

3

in support.[1]  In support of his motion, Jenkins noted that he suffers from Graves' disease, hypothyroidism, hypertension, and high cholesterol.  J.A. 148.  Additionally, he is borderline diabetic and suffers from severe chronic ulcerative and recurring infections from an old gunshot wound to the leg.  *Id.*  In his motion, Jenkins argued that his serious medical conditions place him at an elevated risk of becoming seriously ill or dying from COVID-19, which, in turn, constitutes "an extraordinary and compelling reason" for release.  J.A. 167–69.

Additionally, Jenkins briefly addressed the relevant § 3553(a) sentencing factors. J.A. 170–71.  First, he emphasized that "while [his] offense conduct was certainly serious, it involved neither weapons nor allegations of violence."  J.A. 170.  Second, he asserted that his "continued incarceration [was] not necessary to protect the community from the crimes of the defendant."  *Id.*  Finally, he argued that his "ongoing medication issues rendered [him] entirely at the mercy of the [prison] medical staff."  *Id.*  He did not present any post-sentencing mitigation evidence in his motion.

---

[1] On March 29, 2020, Jenkins submitted a request to the Warden at FCI Fort Dix seeking relief under the CARES Act of 2020.  On April 27, an Executive Assistant for the Bureau of Prisons responded to Jenkins' request.  The Executive Assistant informed Jenkins that his request could not be properly assessed because he failed to indicate which program category he wished to be considered under and failed to include a proposed release plan.  The Executive Assistant advised Jenkins that, "[i]f you still wish to be considered for Compassionate Release[,] . . . please re-submit your request with the one specific category."  J.A. 241.  Jenkins did not resubmit his request.

C.

On November 10, 2020, the District Court of Maryland denied Jenkins' motion for compassionate release.[2]   Using a form order, the district court checked a box labeled "DENIED after complete review of the motion on the merits."  J.A. 180.  In an optional section entitled "Factors Considered," the district court modified the form by adding:  "The factors outlined in 18 U.S.C. § 3553(a) do not favor Mr. Jenkins'[] release.  A separate memorandum accompanies this order."[3]  *Id.*  The form order provided no other explanation for the denial.

Although the expressly referenced "separate memorandum" was also signed on November 10, 2020, the clerk did not docket it until November 30.  J.A. 190.  Meanwhile, on November 23, Jenkins' counsel filed a timely notice of appeal.[4]  J.A. 184–85.  At that time, Jenkins did not provide a basis for his appeal.

The separate memorandum opinion provided a substantive explanation for the district court's denial.  After determining that Jenkins had met the administrative exhaustion requirement, the district court applied the governing two-step test, considering

---

[2] Judge Catherine C. Blake presided over Jenkins' initial sentencing hearing and motion for compassionate release.

[3] The district court did not explicitly address Jenkins' argument regarding extraordinary and compelling circumstances in the form order.  *See High*, 997 F.3d at 187 (finding the district court did not abuse its discretion when basing its ruling solely on the § 3553(a) factors and disregarding the defendant's arguments for extraordinary and compelling circumstances).

[4] Jenkins filed a *pro se* notice of appeal on November 20, 2020.  However, the notice of appeal was not docketed until November 30.

"(1) whether 'extraordinary and compelling reasons' warrant the reduction of Jenkins'[] sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction."  J.A. 188.  First, the district court found that "Jenkins'[] history of smoking and his numerous medical conditions are an extraordinary and compelling reason for his release in light of the risks those factors pose to him."  J.A. 189.  Second, the district court analyzed the relevant § 3553(a) factors.  The court stated that "Jenkins'[] conduct was serious," and "[h]e distributed a large quantity of drugs in furtherance of the activities of a violent gang, contributing to an increasingly dangerous environment in Northwest Baltimore."  J.A. 190.  Additionally, the court noted that Jenkins was a recidivist in large-scale drug trafficking and was convicted, in 2006, for possession with intent to distribute narcotics.  The court also emphasized that "Jenkins ha[d] served less than half of his ten-year sentence, which is the mandatory minimum sentence for convictions involving the trafficking of this quantity of drugs."  *Id.*  As a result, the court concluded that a reduction in sentence would not adequately protect the public from Jenkins' future crimes, promote respect for the law, or afford adequate deterrence.  Thus, the district court denied Jenkins' motion.

Six months later, on May 17, 2021, Jenkins filed his opening brief with this Court. On appeal, Jenkins challenges the district court's decision to deny his § 3582(c)(1)(A) motion.  First, Jenkins asks this Court to ignore the district court's memorandum opinion. Appellant Br. at 10.  Second, Jenkins argues that the district court's denial of his motion was procedurally unreasonable because the court failed to provide an explanation for each of his individualized arguments in favor of a reduced sentence.  Appellant Br. at 7, 11.

6

II.

We review a district court's denial of a § 3582(c)(1)(A) motion for compassionate release for abuse of discretion. *High*, 997 F.3d at 187; *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (quoting *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)). Additionally, we have previously adopted "a presumption that the district court sufficiently considered relevant factors in deciding a [§] 3582(c)(2) motion" or a § 3582(c)(1)(A) motion. *United States v. Martin*, 916 F.3d 389, 396 (4th Cir. 2019) (citing *United States v. Legree*, 205 F.3d 724, 729–30 (4th Cir. 2000)); *see also High*, 997 F.3d at 190 (applying the presumption that the district court sufficiently considered the relevant factors to a § 3582(c)(1)(A) motion).

III.

First, Jenkins asserts that we should disregard the district court's late-filed memorandum opinion. Specifically, Jenkins argues that the substantive memorandum opinion "lacks credibility" and prohibits this Court from "sufficiently and confidently review[ing] whether the district court met the standard of review in denying Jenkins' motion." Appellant Br. at 10. We review both the form order and memorandum opinion on appeal to determine whether the district court's decision was procedurally insufficient and thus an abuse of discretion.

7

A.

When an error is merely "a clerical error in a judgment, order, or other part of the record" or an error "arising from oversight or omission," a district court is authorized to correct the error *at any time*.  Fed. R. Crim. P. 36; *see also Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958) ("It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake.").  Federal Rule of Criminal Procedure 36 is limited to the correction of purely clerical errors and does not extend to judicial or substantive errors.  *United States v. Vanderhorst*, 927 F.3d 824, 828 (4th Cir. 2019) (applying Rule 36 exclusively to clerical errors, not substantive errors); *see also United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 2003) ("Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of errors made by the court itself." (internal quotation marks omitted)).

B.

We find that the district court clearly intended for the memorandum opinion to be part of its November 10, 2020 form order.  There is no evidence that this is a situation where the district court issued an amended order at a later date or provided a post-hoc rationalization for its decision.[5]  Instead, the record reveals that there was nothing more than a delay in docketing.

---

[5] Although a timely filed notice of appeal generally strips a district court of jurisdiction to rule on all matters relating to the appeal, *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014), we find that the district court was not divested of jurisdiction at the (Continued)

8

In making this determination, we first consider that the district court judge signed both the form order and memorandum opinion on November 10, 2020. Further, there is a notation on the docket that the memorandum opinion was previously signed by Judge Blake on November 10, despite being docketed on November 30. Dkt. No. 1580 ("MEMORANDUM as to Dwight Jenkins. Signed by Judge Catherine C. Blake on 11/10/20. . . . (Entered: 11/30/2020)").

Additionally, we review the language of the form order and memorandum opinion. In the form order, the district court explicitly stated, "[a] separate memorandum accompanies this order." J.A. 180. The reference to the separate memorandum opinion reveals that the form order cannot be reviewed in isolation. Instead, the form order and memorandum opinion must be read in conjunction to determine whether the district court abused its discretion in denying Jenkins' motion. Moreover, the memorandum opinion also incorporates by reference the form order, stating "[a] separate order follows." J.A. 190. The district court's express incorporation by reference in both the form order and

time the court signed the form order and memorandum opinion. The district court decided this matter on November 10, 2020, twenty days before the notice of appeal was filed. At that time, the district court signed and dated the form order and memorandum opinion. The district court was not divested of jurisdiction until Jenkins filed his notice of appeal on November 30. Because the district court did not act on this matter after the notice of appeal had been filed, the divestiture rule does not apply. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) ("As a general rule, the filing of an appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Although the memorandum opinion was docketed on the same day as the notice of appeal, the clerk does not need jurisdiction to docket a preexisting written opinion.

memorandum opinion demonstrates its intent to make the memorandum opinion a part of the November 10, 2020 form order.

Further, the district court's use of the present tense, "accompanies" and "follows," suggests that the form order and memorandum opinion were to be docketed simultaneously or in close temporal proximity. These factors, incorporation by reference and use of the present tense, demonstrate that the district court intended for the memorandum opinion to be part of the November 10, 2020 form order despite the 20-day docketing delay. And nothing in the record suggests that the docketing delay was more than a harmless clerical error.[6] *See United States v. Walton*, 587 F. App'x 83, 84 (4th Cir. 2014) (finding no abuse of discretion in denial of relief, "as the purported clerical errors identified by [defendant] have no substantive impact on the court's judgment and are therefore harmless"). Thus, we will review the memorandum opinion in considering the merits of Jenkins' appeal.

IV.

Next, we turn to Jenkins' claim that the district court's denial of his motion was procedurally unreasonable. Jenkins specifically argues that the district court's decision

---

[6] Significantly, Jenkins has not established any prejudicial effect from the delay in docketing. Because Jenkins timely filed his notice of appeal, he was not prohibited from appealing the denial of his motion. Additionally, Jenkins contends the lateness of the memorandum opinion rendered this Court and himself unable to review whether the district court abused its discretion in denying the motion. However, the memorandum opinion was at Jenkins' disposal six months before he filed his opening brief with the Court. Finally, Jenkins disregards the substantive memorandum opinion and argues that the single, conclusory sentence in the form order was procedurally unreasonable. The Court is not persuaded by this argument, as the district court did, in fact, provide both Jenkins and this Court with its explanation for denying Jenkins' motion.

10

was procedurally insufficient because it failed to provide an individualized explanation for each of his arguments for a reduced sentence. Appellant Br. at 6. We conclude that the district court did not abuse its discretion.

## A.

In general, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, § 3582(c)(1) provides an exception to this general rule, where the court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Prior to the passage of the First Step Act, the Bureau of Prisons had the exclusive authority to petition the court for sentence modifications on compassionate release grounds. 18 U.S.C. § 3582(c) (2002); *see* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). But, in 2018, Congress enacted the First Step Act to allow incarcerated individuals to directly petition district courts for compassionate release so long as they first exhaust their administrative remedies. 18 U.S.C. § 3582(c)(1)(A); Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's term of imprisonment if it first finds that "extraordinary and compelling reasons warrant such a reduction," and then after considering any applicable § 3553(a) factors, determines the requested reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." *Kibble*, 992 F.3d at 330. Additionally, the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis. *See id.*

11

As for defining "extraordinary and compelling circumstances," this Court has held "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions *filed by defendants* under the recently amended § 3582(c)(1)(A)." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis added). As a result, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis added)). In addition, although the Federal Sentencing Guidelines § 1B1.13 are not directly applicable to defendant-filed motions pursuant to § 3582(c), the court may consider these guidelines in defining what should be considered an "extraordinary and compelling circumstance" warranting a sentence reduction. U.S.S.G. § 1B1.13 (advising that where "[t]he defendant is suffering from a terminal illness" or "[t]he defendant is . . . suffering from a serious physical or medical condition," the district court may find an "extraordinary and compelling reason"); *High*, 997 F.3d at 187. Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient "extraordinary and compelling circumstance" warranting a sentence reduction.

If a district court finds that a defendant has demonstrated "extraordinary and compelling reasons" for release, it must then consider the § 3553(a) sentencing factors "to the extent that they are applicable" in deciding whether to exercise its discretion to reduce the defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *High*, 997 F.3d at 187. Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford

12

adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see also High*, 997 F.3d at 187.

## B.

Although the district court concluded that Jenkins' health conditions amounted to extraordinary and compelling circumstances,[7] the district court nonetheless denied his motion, holding that "[t]he factors outlined in 18 U.S.C. § 3553(a) do not favor [his] release." J.A. 180. Jenkins contends that the district court's analysis of the § 3553(a) factors was procedurally insufficient as the court failed to provide an individualized explanation for each of his arguments. Because the district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release, *see Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018); *High*, 997 F.3d at 187, we conclude that the district court did not abuse its discretion in denying Jenkins' motion.

### 1.

A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor. *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006) (explaining that to establish reasonableness of a sentence, a district court need not "robotically tick

---

[7] As for "extraordinary and compelling reasons," the government does not contend that the district court abused its discretion by concluding that Jenkins' health conditions amounted to extraordinary and compelling circumstances. J.A. 189. The district court emphasized Jenkins' history of smoking and numerous medical conditions, which according to the Centers for Disease Control ("CDC") increase his risk of severe illness related to COVID-19. *Id.* Additionally, the district court acknowledged that "the risk to Jenkins of illness [was] not at all speculative" because he tested positive for COVID-19 on October 30, 2020. *Id.*

through" every § 3553(a) factor on the record).  Further, a district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release under § 3582(c)(1).  *High*, 997 F.3d at 187.  Although a district court is not required to address each of a defendant's arguments for a reduced sentence, just how much of an explanation is required depends upon the narrow circumstances of the particular case.  *Chavez-Meza*, 238 S. Ct. at 1965 (affirming the district court's "barebones form order" denying defendant's request for a sentence modification under § 3582(c)(2)); *see also High*, 997 F.3d at 191 (applying *Chavez-Meza* to affirm the district court's denial of a § 3582(c)(1)(A) motion for compassionate release).

In *Chavez-Meza*, the Supreme Court held

> In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others.  But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing).

*Chavez-Meza*, 238 S. Ct. at 1965.

In other words, there is no "categorical requirement" that a court acknowledge and address each of the defendant's arguments on the record.  *Id.* at 1965.  Instead, the relevant standard is whether the district court "set forth enough to satisfy [this] court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority, so as to allow for meaningful appellate review."  *High*, 997 F.3d at 190 (quoting *Chavez-Meza*, 138 S. Ct. at 1965).

14

2.

In this case, the district court's explanation of the relevant § 3553(a) factors in the form order and memorandum opinion are sufficient to allow for meaningful appellate review. In making this determination, we look to the record as a whole to establish that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *High*, 997 F.3d at 190. The form order indicates the basis on which the district court rejected Jenkins' motion—that the § 3553(a) factors did not favor his release. Further, the district court expands upon this basis in the memorandum opinion by providing a more thorough explanation of the relevant § 3553(a) factors. Jenkins disagrees that the district court's denial was procedurally reasonable. He argues that the district court did not specifically consider that "[his] offenses were not violent, there were no weapons involved in the offense, and he does not have a violent criminal history." Appellant Br. at 6. But the district court expressly acknowledged Jenkins' criminal history and that this was not his first drug trafficking conviction. J.A. 190. Further, the court considered the seriousness of Jenkins' offense and alluded to the conduct's violent nature. *Id.* ("[Jenkins] distributed a large quantity of drugs in furtherance of the activities of a *violent* gang, contributing to an increasingly *dangerous* environment in Northwest Baltimore.") (emphasis added).[8] Accordingly, the district court

---

[8] Significantly, Jenkins' appeal relies on the district court's failure to consider his argument that he posed no danger to the community. However, this argument is belied by the record. The memorandum opinion expressly states that Jenkins' prior criminal history involving drug distribution suggests "that a reduction in sentence would not adequately protect the public from further crimes by Jenkins." J.A. 190.

did weigh Jenkins' nonfrivolous arguments, either explicitly or implicitly, and thereby did not abuse its discretion in denying Jenkins' motion based on the § 3553(a) factors.

Additionally, this Court finds it significant that the district court did not end its analysis of the relevant § 3553(a) factors after addressing Jenkins' individualized arguments. Although not dispositive, the district court further explained that Jenkins had served less than half of his 10-year sentence. *See Kibble*, 992 F.3d at 331 (holding that "[t]he district court was entitled to consider the amount of time [defendant] already had served as one factor in the § 3553(a) analysis," but this was not dispositive). The court also emphasized that Jenkins' sentence was the mandatory minimum sentence for convictions involving the trafficking of this quantity of drugs.

Furthermore, it is significant that the district judge who considered and denied Jenkins' motion "was the same judge who had sentenced [him] originally." *Chavez-Meza*, 138 S. Ct. at 1967 ("We . . . need not turn a blind eye to what the judge said at petitioner's initial sentencing."); *High*, 997 F.3d at 189. At the original sentencing hearing in April 2017, the judge sentenced Jenkins to the mandatory minimum sentence for convictions involving the trafficking of this quantity of drugs. Further, Jenkins did not present any post-sentencing mitigating evidence. *Compare High*, 997 F.3d at 190 (affirming the district court's denial of defendant's motion for a reduced sentence, in part, because the defendant's mitigating evidence, completion of educational courses and lack of disciplinary infractions, did not amount to a "mountain of new mitigating evidence" requiring further explanation), *with Martin*, 916 F.3d at 396–97 (holding that because the defendant had presented "a mountain of new mitigating evidence" documenting her

16

rehabilitation, the district court needed to provide "a more robust and detailed explanation for why it denied her motion"), *and United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) ("Appellants here have each spent nearly two decades in prison where, despite lengthy prison terms, they utilized the resources and programming they could access in prison to work toward rehabilitation. Under *Martin*, that kind of post-sentencing mitigating evidence is enough to require a district court to provide an explanation on the record of its reasons for deciding a sentencing reduction motion.").

In further support that the district court acted within its discretion, the court specified that it was fully aware of Jenkins' particular vulnerability to COVID-19 as well as his increased risk by virtue of being incarcerated. The district court was "mindful of Jenkins'[] COVID-19 diagnosis," but concluded that "his current health status [did] not, however, persuade the court that it [was] appropriate to release [him]." J.A. 190. Thus, the district court's decision reflects its understanding of Jenkins' health conditions, the conditions of FCI Fort Dix, and the seriousness of those circumstances in light of the COVID-19 pandemic.

In actuality, the district court's explanation as to the § 3553(a) factors was more expansive than the district court explanations upheld as adequate in *Chavez-Meza*, *High*, and *Kibble*. *See Chavez-Meza*, 138 S. Ct. at 1965, 1968 (affirming a barebones form order that merely "certified the judge had 'considered' the petitioner's motion and 'tak[en] into account' the § 3553(a) factors"); *High*, 997 F.3d 184–85 (affirming the district court's denial of petitioner's motion with a brief paragraph explaining the § 3553(a) factors counseled against relief); *Kibble*, 992 F.3d at 329, 332 (affirming the district court's denial

17

of petitioner's motion simply stating that although petitioner's medical conditions presented "extraordinary and compelling reasons," petitioner posed a danger to society and that the § 3553(a) factors counseled against early release).  Thus, the district court did not abuse its discretion in concluding that the § 3553(a) factors weighed against granting relief in Jenkins' case.

## V.

The district court did not abuse its discretion in denying Jenkins' motion for compassionate release.  Thus, we affirm the district court's judgment.

*AFFIRMED*